WILLIAM H. SKILLMAN, appellant,

v.

MARY J. LANEHART et al., respondents.

[Argued February 6th, 1907.   Decided June 1st, 1907.]

In a proceeding to probate a will, evidence examined, and *held* insufficient to establish the genuineness of the signature.

On appeal from a decree of the orphans court of Somerset county.

*Messrs. Clark & Case,* for the appellant.

*Mr. Nelson Y. Dungan* and *Mr. James L. Griggs,* for the respondents.

MAGIE, ORDINARY.

A paper writing, purporting to be the last will and testament of William Lanehart, deceased, was offered to the surrogate of Somerset county and admitted to probate by him.   No caveat had then been filed against its admission by any heir-at-law or next of kin.

Appeals to the orphans court of Somerset county from the decree of the surrogate admitting the paper writing to probate

were afterward taken by heirs-at-law and next of kin of the deceased and by an executor named in another paper writing alleged to be the last will of the deceased. These appeals came on for hearing before the orphans court, and after taking a large amount of testimony orally and by commission that court reached the conclusion that the paper writing in question was not the last will and testament of the deceased William Lanehart. It thereupon revoked the decree of the surrogate and refused to admit to probate the paper writing as the will of William Lanehart.

The appeal to this court is prosecuted by William H. Skillman, named as executor in the paper writing which was refused probate.

In considering the voluminous testimony that has been taken and presented to this court by the transcript, it is not improper to call attention to two facts which are undisputed.

In the first place, the alleged testator had executed a previous will, in which he recognized the claims of brothers and sisters, especially of one sister of whom he seems to have been particularly fond. This will had been left by the testator with the cashier of a bank, in which he kept his deposit, among his other papers of value, and it appears that he had frequently since the time the disputed writing is claimed to have been made, examined those papers and had them in his possession, and that he had not withdrawn from the possession of the cashier, or destroyed or canceled, the will that was among them.

In the second place, the disputed writing ignores entirely the brothers and sisters of the testator (he having left no descendants), and after some small legacies leaves all the *residuum* of his estate to be divided between "the lady known as Laura Kellogg, my niece," and William H. Skillman, who drew the paper.

This paper was not only drawn by William H. Skillman, but the claim is that it was executed by the testator and published as his will in the house of William H. Skillman, in the presence of William H. Skillman, his son Jeremiah Skillman, who was one of the attesting witnesses, another son, Edmund, who was not an attesting witness, his daughter, Elva, who was

not an attesting witness, and William H. Ely, who was an attesting witness and the friend of William H. Skillman, who offers the will for probate.

Where the person who drafts a will which bestows upon him a substantial part of the testator's estate, procures its execution in his own family, with no other witnesses present except one who, the evidence discloses, is his intimate friend, the court in which probate of such a will is sought, ought to be cautious and careful in its examination of the facts and in its determination that it was the free act of the testator. This is particularly so when he who drafts the will is not related to or connected with the alleged testator and there is no proof of such a degree of intimacy as would render it apparently natural that he should pass over the claims of near relatives, with whom he was on terms of affection, in favor of the scrivener. The alleged will was written upon two sides of a leaf of foolscap paper, which had been severed from the sheet to which it was previously connected. The writing commences at the upper side of the leaf and continues to the bottom. The leaf has then been reversed and turned over, and the writing is continued on the other side of it, and concludes on the very last line of that side of the leaf. The alleged signature is written at the bottom, in the space which is as usual not marked with lines.

The attestation clause, which is perfect in form, is written at the top of another leaf of foolscap paper also severed from its connection with the sheet and is signed by the attesting witnesses at its foot.

The weight of the evidence renders it clear that there was no physical connection between the two leaves at the time the attestation clause was signed. There was no connection inferable from any continuity in the expressions of the will as would have happened if the bequests and devises appearing on the first leaf had been continued upon the top of the second leaf, on which the attestation clause was written. It is, however, testified to by those present at the alleged execution that the attestation clause had been written and was lying on the desk upon which the alleged will was signed, at the time of such signing. There is some indication from the evidence that it had

been attached thereto at some time by a pin, but that it was not so attached at the time of the signature is clear, because the signature could not have been made if the paper was attached as indicated by the pinholes.

I deem it unnecessary to decide in this case whether an attestation clause entirely disconnected from the testamentary disposition and signature will support the probate of a will thus attested. It is sufficient to point out that such a mode of execution and attestation permits the substitution of a leaf with a fabricated signature for that which may have been witnessed by the testamentary witnesses attesting its execution.

The first question which presents itself to my consideration is as to the genuineness of the signature to the first leaf of the paper writing in question.

There were put in evidence and have been presented to me many signatures of the alleged testator, proved to have been made by him. Among them is a series of signatures to checks drawn upon the bank in which he kept a deposit. This series extends to a point of time within two, or at the most, three days before the alleged execution of the will. Other checks, made after the alleged execution, are also presented. These signatures and especially those on the checks exhibit the testator as capable of writing his name in a legible hand, with distinguishing characteristics, which do not appear in the alleged signature to the contested paper. That this signature is not a genuine signature of the deceased is testified to by those who are acquainted with his writing and his signature, by reason of business relations with him. Many other witnesses accustomed to examine and compare signatures by reason of their duties as officers of banks and in other capacities declared that the contested signature is not that of the deceased. An intelligent expert, unfamiliar with the signature of the deceased except from specimens of the signature produced and proved, declared that the contested signature is not his.

The evidence produced by the proponents of the will does not impress me with equal force. It is brought out from persons who are acquainted with the signature of deceased only by irregular and casual transactions. It cannot, in my judgment,

overcome the evidence given to the contrary by persons who acquired their knowledge of the characteristics of the signature of the deceased in transactions in which it became their duty to examine his signature and to determine its genuineness before relying upon it and paying money on it. If the genuineness of this disputed signature is to be determined upon the evidence above referred to, I deem it to be clear that the proponents of this will have not made out their case.

But it is contended by the proponents of this paper that there is clear proof of the actual execution of it by the deceased and the actual making of the disputed signature by him. It is undoubtedly true that clear and reliable proof that the signature was actually made by testator will overcome any inference which might be drawn by the court upon its inspection of the disputed signature, and also any opinion proof given by persons acquainted with his genuine signature, to the effect that this is not a genuine signature of deceased.

The attestation clause declares that the paper in dispute was executed and published by deceased as his will, on February 27th, 1905. It is conceded that the date of execution was erroneous. The explanation is that the date was inserted in that clause by William H. Skillman, the scrivener and beneficiary, because deceased had appointed that day for the execution of his will. The contention is that upon a day, the date of which is not accurately fixed, but which must have been either the 1st or 2d of March, 1905, there is convincing proof that the deceased, in the house of William H. Skillman, and in the presence of his three children and of William H. Ely, actually affixed this very signature to the paper in dispute.

The paper in dispute has at its ends the words "Wm. Lanehart." It is clear, however, that those words were first written in pencil and then traced by a pen and ink over the pencil marks. That the pencil marks were more evident when the paper was first produced than they are now is established by proof, and an inspection of the signature at the present time shows such marks.

That the testator, who was capable of making such signatures as were established by proof he did make to the checks

shortly before and after the alleged execution, had signed this paper in pencil, afterward tracing it over in ink, is the contention of the proponents of this will.

Of the attesting witnesses to this will one, William H Ely, does not pretend to have seen the use of a pencil; the other, Jeremiah Skillman, swears he saw him use a pencil and assumed that he had traced it with ink, because, when he signed as witness, he saw the ink signature. Two other of the children of William H. Skillman declare that they saw the testator use a pencil and therewith write his name, and then change the pencil from one hand to the other and then trace the signature with a pen.

I find it impossible to consider this evidence credible or reliable. The proof of the business capacity of the testator and his ability to make a plain and characteristic signature to those checks which were to be used in withdrawing his deposit from the bank in which he kept his funds, renders it incredible that when he came to write his signature to a paper which was to dispose of his whole property after his death, and to leave a large portion of it to a person not related to or connected with him, to the exclusion of those who had natural claims upon him, he would have proceeded to execute the paper, which he must have understood would be likely to be contested, by writing his name in pencil and then tracing it over with ink.

This conclusion is not at all shaken by the proof that the deceased was accustomed to write letters and notes in pencil and not in ink. No instance has been produced in which the deceased, after writing his signature in pencil, has traced it over with ink.

Nor do I think that the proof that the day on which this signature is claimed to have been made was cold; that the deceased had driven to Skillman's house from some distance and that he had two overcoats on, satisfactorily accounts for the use of a pencil in making a signature. I may add that it seems to me incredible that the deceased if driven to the use of a pencil in making his signature would have failed to point out, at least to the attesting witnesses, the fact that he adopted this unusual mode of making his signature.

The result is that I have concluded that the orphans court was right in determining that the disputed signature is not a genuine signature of the deceased. There was an opportunity to substitute for the first leaf of this paper another leaf skillfully written so as to occupy the same space as that which may have been signed by the testator, and to trace at the bottom of it a pencil imitation of his true signature, and thereupon, with ink, produce the signature now in dispute.

I deem it unnecessary to analyze the evidence voluminously taken in this case. It has been done with great care by the learned judge of the orphans court. He had the great advantage of seeing the witnesses and hearing their evidence. If I had felt any doubt on the points I have discussed, which relate to questions of fact, I should not have been willing to disagree with the conclusions he reached. But I find none of his conclusions on which I have doubts.

It results that the decree of the orphans court must be affirmed.